IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| JORDAN M. BARNETT, | ) | Civil No.: 3:15-cv-00987-JE |
| | ) | |
| Plaintiff, | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

       Merrill Schneider
       Schneider Kerr Law Offices
       P.O. Box 14490
       Portland, OR 97293

            Attorney for Plaintiff

       Billy J. Williams, Acting U.S. Attorney
       Janice Hebert, Asst. U.S. Attorney
       1000 S.W. 3rd Avenue, Suite 600
       Portland, OR 97204

       Sarah Elizabeth Moum
       Special Asst. U.S. Attorney
       Office of the General Counsel
       Social Security Administration
       701 5th Avenue, Suite 2900 M/S 221 A
       Seattle, WA 98104-7075

            Attorneys for Defendants

FINDINGS AND RECOMMENDATION – 1

JELDERKS, Magistrate Judge:

Plaintiff Jordon[1] Barnett brings this action pursuant to 42 U.S.C. §405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his application for Supplemental Security Income (SSI) under the Social Security Act (the Act). Plaintiff seeks an Order remanding the action to the Social Security Administration (the Agency) for an award of benefits or, in the alternative, remanding for further proceedings.

For the reasons set out below, the Commissioner's decision should be reversed and remanded for further proceedings.

## **Procedural Background**

Plaintiff protectively filed an application for SSI on May 10, 2011, alleging he had been disabled since June 23, 1990.

After his claims were denied initially and upon reconsideration, Plaintiff timely requested an administrative hearing.

On July 30, 2013, a hearing was held before Administrative Law Judge (ALJ) Glenn Meyers. Plaintiff and Richard Hincks, a Vocational Expert (VE), testified at the hearing. Plaintiff was represented by counsel.

In a decision dated, August 12, 2013, ALJ Meyers found that Plaintiff was not disabled within the meaning of the Act.

On April 2, 2015, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. In the present action, Plaintiff challenges that decision.

---

[1] Although Plaintiff's name appears as "Jordan" on the case caption and the ALJ's decision, Plaintiff's name is given as "Jordon" throughout the remainder of the record, including in Plaintiff's own signature.

FINDINGS AND RECOMMENDATION – 2

**Background**

Plaintiff was born in 1990 and was 23 years old at the time of the ALJ's decision. Tr. 210. He attended special education classes in school and graduated from high school. Tr. 225. He has no past relevant work. Tr. 23.

**Disability Analysis**

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  20 C.F.R. §§ 404.1520, 416.920.  Below is a summary of the five steps, which also are described in *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One.  The Commissioner determines whether the claimant is engaged in substantial gainful activity (SGA).  A claimant engaged in such activity is not disabled.  If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two.  20 C.F.R. § 404.1520(b).

Step Two.  The Commissioner determines whether the claimant has one or more severe impairments.  A claimant who does not have such an impairment is not disabled.  If the claimant has a severe impairment, the Commissioner proceeds to evaluate the claimant's case under Step Three.  20 C.F.R. § 404.1520(c).

Step Three.  Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the presumptively disabling impairments listed in the Social Security Administration (SSA) regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1.  A claimant who has such an impairment is disabled.  If the claimant's impairment does not meet or equal an impairment listed in the

FINDINGS AND RECOMMENDATION – 3

regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four. 20 C.F.R. § 404.1520(d).

Step Four.  The Commissioner determines whether the claimant is able to perform relevant work he or she has done in the past.  A claimant who can perform past relevant work is not disabled.  If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five.  20 C.F.R. § 404.1520(f).

Step Five.  The Commissioner determines whether the claimant is able to do any other work.  A claimant who cannot perform other work is disabled.  If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do.  The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2.  If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled.  If the Commissioner does not meet this burden, the claimant is disabled.  20 C.F.R. § 404.1520(g)(1).

At Steps One through Four, the burden of proof is on the claimant.  *Tackett*, 180 F.3d at 1098.  At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy.  *Id.*

## **ALJ's Decision**

At the first step of his disability analysis, the ALJ found that although Plaintiff had worked after the application date, his work activity had not risen to the level of substantial gainful activity.

At the second step, the ALJ found that Plaintiff had the severe impairment of low intellectual functioning. Tr. 18.

At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment set out in the Listings, 20 C.F.R. Part 404, Subpart P, App. 1.

The ALJ next assessed Plaintiff's residual functional capacity (RFC). He found that Plaintiff retained the capacity to perform a full range of work at all exertional levels. He further found that Plaintiff was capable "of unskilled, repetitive, routine work. He is able to read, to do math, and to write at the second grade level. The claimant works at his own pace, but he would not compromise the minimal production requirements of the job." Tr. 20. In making his determination, the ALJ found not all of Plaintiff's symptom allegations to be credible. Tr. 21.

At the fourth step, the ALJ found that Plaintiff had no past relevant work.

At the fifth step of the disability analysis, the ALJ found that Plaintiff could perform other jobs that existed in significant numbers in the national economy. Based upon testimony from the VE, the ALJ cited laundry worker and linen supply room worker as examples of such work.  Having concluded that Plaintiff could perform other work, the ALJ found that Plaintiff had not been under a disability within the meaning of the Act since May 10, 2011, the date his application was protectively filed. Tr. 24.

## Standard of Review

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Claimants bear the initial burden of establishing disability. *Roberts v. Shalala*, 66 F.3d 179, 182

(9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996).  The Commissioner bears the burden of developing the record,  *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991), and bears the burden of establishing that a claimant can perform "other work" at Step Five of the disability analysis process.  *Tackett*, 180 F.3d at 1098.

    The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039.  The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision.  *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).  The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation."  *Andrews*, 53 F.3d at 1039-40.

## Discussion

    Plaintiff contends the ALJ erred in improperly discounting the opinion of examining psychologist, Dr. Michelle Whitehead; in failing to account for all the material limitations found by State Agency physicians; in disregarding the opinion of his vocational counselor; and in finding that he was not wholly credible.

## I. Evaluating Medical Opinion

    As noted above, Plaintiff contends that the ALJ failed to provide legally sufficient reasons for rejecting the opinion of State Agency examining psychologist, Dr. Whitehead and failed to account for all the material limitations found by State Agency reviewing psychologists.

## A. Applicable Standards

The ALJ is required to consider all medical opinion evidence and is responsible for resolving conflicts and ambiguities in the medical testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). In reviewing an ALJ's decision, the court does not assume the role of fact-finder, but instead determines whether the decision is supported by substantial evidence in light of the record as a whole. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.1992).

The opinion of an examining physician is entitled to greater weight than the opinion of a non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990). An ALJ must provide clear and convincing reasons for rejecting the uncontradicted opinions of an examining physician, *id.*, and must provide specific and legitimate reasons for rejecting opinions of an examining physician that are contradicted by another physician. *Andrews*, 53 F.3d at 1043. A non-examining physician's opinion "cannot by itself constitute substantial evidence that justifies rejection of the opinion of either an examining physician or a treating physician." *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir.1995).

## B. State Agency Consulting Psychologists

A claimant's allegation of severe mental impairment requires application of the analysis provided in a "special technique." 20 C.F.R. §§ 404.1520(a), 416.920a(a). Pursuant to the special technique, relevant symptoms, signs, and medical findings are first evaluated to determine whether the claimant has any medically determinable mental impairments. 20 C.F.R §§ 404.1520a(b)(l), 416.920a(b)(l). If such impairments are shown, the ALJ specifies the evidence establishing the existence of the impairments and evaluates the claimant's degree of functional limitation. 20 C.F.R. 404.1520a(b)(l), 416.920 a(b)(l).

The ALJ's residual functional capacity (RFC) assessment is separate and distinct from the special technique analysis. *See* 20 C.F.R. §§ 404.1520a(b)(l), 404.1546(c), 416.920a(b)(l), 416.946(c); SSR 96–8p. As the ALJ noted in his decision, the limitations identified at step three "are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process." Tr. 20. *See, e.g., Dodds v. Astrue*, No. CIV. 09-332-AC, 2010 WL 5662968, at *3 (D. Or. Dec. 28, 2010), *report and recommendation adopted*, No. CIV. 09-332-AC, 2011 WL 304993 (D. Or. Jan. 25, 2011)(B criteria used to determine whether impairment is severe enough to require RFC assessment, not to determine claimant's RFC).

State agency consulting psychologists Dr. Bill Hennings and Dr. Paul Rethinger completed Psychiatric Review Technique Forms ("PRTF") and Mental Residual Functional Capacity ("MRFC") assessments in October of 2011 and February of 2012. In the PRTF portion of their assessments, both found that Plaintiff had the severe impairment of mental retardation. Tr. 75, 88. In assessing the general severity of Plaintiff's mental impairment under the criteria for mental disorders, both psychologists opined that Plaintiff had mild difficulties in activities of daily living; no difficulties in social functioning; and marked difficulties in maintaining concentration, persistence and pace. Tr. 76, 89.

In assessing Plaintiff's RFC, both psychologists opined that Plaintiff was not significantly limited in his ability to understand, remember and carry out short and simple instructions and was moderately limited in his ability to understand, remember and carry out detailed instructions. Tr. 77-78, 91. In their narrative, both wrote that Plaintiff was "capable of understanding/remembering simple (1-2 step) work-like procedures. He is not capable of understanding/remembering more detailed (3 or more steps) instructions." Tr. 78, 92. They

additionally opined that Plaintiff was moderately limited in the ability to set realistic goals or plan independently and that he would benefit from vocational rehabilitation but that "there is no indication that special supervision would be necessary." Id.

The ALJ gave the State agency consultants' opinions that Plaintiff would be capable of understanding and remembering simple one to two step work-like procedures and of maintaining concentration, persistence and pace on simple one to two step tasks "significant weight," finding that they were consistent with the entire evidentiary record. The ALJ's RFC determination limited Plaintiff to unskilled, repetitive, routine work. Id.

Plaintiff argues that the ALJ erred in failing to note Dr. Hennings' and Dr. Rethinger's findings that he had marked difficulties in concentration, persistence and pace and erred in finding that he was only moderately limited in these areas. Plaintiff also argues that the ALJ erred in failing to account for the State agency consultants' opinions that Plaintiff was moderately limited in his ability to set realistic goals or plan independently and would benefit from vocational rehabilitation.

Plaintiff's argument conflates the ALJ's special technique analysis at step three and the ALJ's residual functional capacity assessment relevant to steps four and five. The State agency reviewing psychologists' opinions regarding marked limitations in concentration, persistence and pace were made as part of their assessment under the Listings as was the ALJ's finding of moderate limitations in concentration, persistence and pace. He ultimately concluded that Plaintiff's mental disorder was severe but found that it did not meet or equal one of the Listed impairments. Tr. 19. Plaintiff does not challenge this finding.

Furthermore, the ALJ did not find marked limitations in any of the other categories, which Plaintiff also does not challenge. To satisfy the requirements of the Listing, the ALJ

would have had to have found that Plaintiff had marked limitations in at least two categories. Therefore, even if the ALJ had found that Plaintiff had marked restrictions in concentration, persistence and pace, the absence of marked restrictions in any other category precluded Plaintiff's mental impairment from meeting the Listing for 12.05D. Thus, any error in finding only moderate limitations in concentration, persistence and pace was harmless.

In addition, the ALJ properly incorporated the State agency reviewing psychologists' functional capacity assessments in his RFC determination. Despite finding marked limitations in concentration, persistence and pace within the context of their Listings severity analysis, Drs. Hennings and Rethinger both opined that Plaintiff was not significantly limited in his ability to understand, remember and carry out short and simple instructions; was capable of understanding/remembering simple (1-2 step) work-like procedures; and was not significantly limited in his ability to sustain an ordinary routine without special supervision. The ALJ adequately accounted for these limitations by limiting Plaintiff to unskilled, repetitive, routine work. *See Stubbs–Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (holding that "an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony").

Finally, I am not persuaded by Plaintiff's argument that the ALJ was required to account for the State agency consultants' opinions that Plaintiff was moderately limited in the "ability to set realistic goals or make plans independently" and would benefit from vocational rehabilitation. Taken in context of their overall evaluation, the State agency consultants' remarks regarding vocational rehabilitation did not rise above the level of recommendations. The consultants' narrative explanations of Plaintiff's adaptive limitations do not indicate any specific

imperatives that the ALJ was required to include in his RFC assessment. *See Carmickle v. Comm'r, Soc. Sec. Admin.,* 533 F.3d 1155, 1165 (9th Cir.2008)(ALJ may rationally rely on specific imperatives regarding a claimant's limitations, rather than recommendations).

## C. Dr. Whitehead

In 2011, at the request of Disability Determination Services, Dr. Whitehead conducted an Intellectual Assessment Examination of Plaintiff. Tr. 392. She performed a clinical interview, a mental status examination and administered tests to determine Plaintiff's IQ. Id. Results of the IQ testing indicated Plaintiff had a verbal comprehension IQ of 74, a perceptual reasoning IQ of 66, a working memory IQ of 66, a processing speed IQ of 74 and a full scale IQ of 66. Tr. 394-395. Dr. Whitehead opined that Plaintiff's "[i]ntellectual and cognitive abilities are estimated to be in the extremely low to borderline range based upon claimant's clinical presentation, education and occupational history." Tr. 394 She noted that his ability to perform simple or routine material without making errors was better than only 4% of his peers and that he "had difficulty with the two tasks that demand mental control, that is, attending and holding information in short-term memory while performing some operation or manipulation with it and then correctly producing the transformed information." Tr. 395. She concluded that Plaintiff was "functioning in the extremely low range of intellectual functioning . . . ." and would have "significant limitations working independently . . . ." Tr. 397.

The ALJ did not call into question the results of Dr. Whitehead's cognitive testing of Plaintiff but did reject her opinion that Plaintiff would have significant limitations in working independently. The ALJ offered two reasons for doing so. First, the ALJ found the opinion inconsistent with the record, specifically with regards to Plaintiff's father's statements that Plaintiff was able to work unsupervised cleaning horse stalls and would be capable of holding a

job where tasks were clear and straightforward. Second, the ALJ found Dr. Whitehead's opinion to be inconsistent with her own observations of Plaintiff. The Commissioner argues that these were legally sufficient reasons to reject Dr. Whitehead's opinion. I disagree.

As noted above, Dr. Whitehead's opinion regarding Plaintiff's ability to work unsupervised was contradicted by the opinions of the State agency consulting psychologists. The ALJ, therefore, was required to provide specific and legitimate reasons supported by substantial evidence in order to properly discount Dr. Whitehead's opinion. Although inconsistencies between a medical source opinion and the Plaintiff's activities of daily living may serve as a valid basis for rejecting that opinion, *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); the ALJ cited only to Plaintiff's father's statements about Plaintiff's abilities. Plaintiff argues that the ALJ failed to consider the context of his father's statements. I agree.

First, Mr. Barnett's statement was made in 2007 in response to a vocational questionnaire that was part of Plaintiff's high school special education evaluation. Tr. 368. The statement was made five years before Dr. Whitehead's testing and clinical evaluation which, in itself, undermines its adequacy as basis for rejecting the examining physician's opinion. Furthermore, the record shows that Mr. Barnett was referencing a job that Plaintiff performed for a family member for less than four hours a day at a pay rate of $2 an hour. Tr. 219. At the administrative hearing, the VE confirmed there was nothing in Plaintiff's employment history that suggested competitive employment. Tr. 64.  In addition, a more recent lay witness statement from Plaintiff's mother, which the ALJ gave some weight, reflected her belief that Plaintiff could not "always retain instructions" and would not "be able to fully compete in the job market without a complete set of skills." Tr. 23, 351. The ALJ failed to fully account for the context of the evidence on which he relied to reject Dr. Whitehead's opinion and thus the cited inconsistencies

with the record were neither a clear and convincing nor a specific and legitimate reason for that rejection. *See Reddick v. Chater*, 157 F.3d 715, 722-23 (9th Cir. 1998).

Plaintiff argues that the ALJ impermissibly relied on a selective reading of the record in finding Dr. Whitehead's opinion inconsistent with her own observations of Plaintiff. The ALJ noted that Dr. Whitehead described Plaintiff has having "goal directed mental activity with an average rate of speech and with logical and coherent thought content." Tr. 22. He also noted her findings that Plaintiff could recall two out of three items after a delay, was able to spell the word "world" both forward and backward and was able to give appropriate and correct responses when his general fund of knowledge was tested. Tr. 22. However, the record also reflects that Dr. Whitehead's testing, which the ALJ did not discount, demonstrated that Plaintiff had "[i]ntellectual and cognitive abilities . . . in the extremely low to borderline range . . . ." Tr. 394, that his ability to perform simple or routine material without making errors was better than only 4% of his peers and that he "had difficulty . . . attending and holding information in short-term memory while performing some operation or manipulation with it and then correctly producing the transformed information." Tr. 395. These findings and the results of Plaintiff's IQ testing are not inconsistent with Dr. Whitehead's opinion regarding Plaintiff's ability to work independently. The ALJ erred in relying on only select portions of the evidence and failed to provide legally sufficient reasons for rejecting Dr. Whitehead's opinion.

Because the ALJ failed to provide legally sufficient reasons for rejecting Dr. Whitehead's opinion, he erred. The Commissioner argues that there is no inconsistency between Dr. Whitehead's opinion and the RFC and thus any error was harmless. I disagree. Whether Plaintiff if able to work unsupervised is a critical question in assessing his functional capacity and neither Plaintiff's RFC nor the hypothetical to the VE addressed such a limitation. *See*, *e.g. Gallant v.*

FINDINGS AND RECOMMENDATION – 13

*Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) (an ALJ's hypothetical to a VE must set out all of the claimant's impairments). Remand is warranted.

## II. Plaintiff's Subjective Symptom Testimony

Plaintiff contends that the ALJ failed to articulate clear and convincing reasons, supported by substantial evidence, for finding that his statements regarding the severity of his cognitive limitations were not fully credible.

Plaintiff testified he thought that he was unable to find jobs as a fast food cashier or cook because he was unable to count change and would get "lost in directions" if asked to cook something more complicated than "mac and cheeses or a sandwich." Tr. 36, 42. He tried to study for and take the test on his own for a food handler's permit but failed the test. He then asked for and received help from a teacher with studying and taking the test and was able to pass. Tr. 37-38. It took him five times to pass the Washington State driver's exam to get his driver's license and he had to have one-on-one help in order to pass it. Tr. 40. He was unable to pass the Oregon driver's license test. Tr. 41.

Plaintiff worked for his stepmother and father cleaning horse stalls. His father paid him $2 an hour. He cleaned two to five stalls a day and each stall took approximately 35 to 40 minutes to clean. Tr. 43-45. Occasionally, he would forget to bring a horse in from the corral. Tr. 44. He liked the work because it kept him busy. Tr. 45. He has an attention span "that's like a 2-year-old," he wanders away from jobs, and has been yelled at for not finishing his work. Tr. 45-46. At the time of the hearing, Plaintiff worked part-time for a company that provides security and arena conversions for various sports coliseums. Tr. 46. He helps convert the arenas for different uses and does guest ticket checks and bag searches for events. Tr. 47. Occasionally, he gets confused and directs people to the wrong part of the stadium. Tr. 48. When asked by the

ALJ what would prevent him from working Monday through Friday for his employer, Plaintiff responded, "mostly transportation." Tr. 56. He uses the transit system and gets rides from family to get around town and to go to work. He hasn't driven in two to three years. Tr. 60-61.

Plaintiff uses a smartphone and the internet for music, talking, texting, Facebook and YouTube. He also enjoys playing racing games on the Xbox and can play for up to two hours at a time. Tr. 63. Plaintiff would like to go back to school and "just want[s] to do something good in my life." Tr. 58. He likes to be around aircraft and would like to study something in aviation. Id.

**A. Standards**

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of ... symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted).

In evaluating a claimant's subjective symptom testimony, an ALJ must consider the entire record and consider several factors, including the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; medications taken and their effectiveness; treatment other than medication; measures other than treatment used to relieve pain or other symptoms; and "other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms." C.F.R. § 404.1529(c). If substantial evidence supports the ALJ's determination, it must be upheld, even if some of the reasons cited by the ALJ are not correct. *Carmickle*, 533 F.3d at 1162.

**B. Analysis**

Because Plaintiff's medically determinable impairments could reasonably be expected to cause some degree of symptoms and there was no evidence of malingering, the ALJ was required to provide clear and convincing reasons supported by substantial evidence for discounting Plaintiff subjective symptom testimony. The ALJ here discounted Plaintiff's testimony as inconsistent with his reported activities of daily living and his work history. Tr. 21. These were clear and convincing reasons supported by substantial evidence in the record. *See Thomas v. Barnhart*, 278 F.3d 947, 958–59 (9th Cir.2002)(ALJ may support credibility determination by identifying inconsistencies between the claimant's complaints and his activities of daily living; work history is a relevant consideration in assessing a claimant's credibility).

The ALJ noted that Plaintiff alleged significant limitations due to his difficulties in cognitive functioning and he acknowledged that the record supported that Plaintiff had some difficulties in this area.  However, the ALJ pointed to Plaintiff's testimony that he used public transportation, played video games and was able to use a smartphone and the internet to access applications like YouTube and Facebook and to get directions. The ALJ also noted Plaintiff's mother's statements in a function report that Plaintiff could prepare simple meals, go shopping and do household chores. The ALJ referenced Plaintiff's school records which indicated he followed directions well and took initiative. Tr. 21. The ALJ also noted that Plaintiff was currently working part-time and had testified that transportation was the biggest obstacle to his working on a full-time basis. Id.

As discussed above, I agree that the ALJ construed some of the evidence he cited too narrowly to accurately reflect Plaintiff's limitations. Plaintiff's father's statements regarding Plaintiff not needing supervision, and Plaintiff's ability to eventually obtain a food handler's

permit and a Washington driver's license do not account for the difficulties he experienced in trying to accomplish those tasks. However, the ALJ clearly provided other valid bases for discounting Plaintiff's testimony, each supported by substantial evidence in the record. Accordingly, the credibility determination should be upheld. *See Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1197 (9th Cir.2004) (concluding that, even if the record did not support one of the ALJ's stated reasons for disbelieving a claimant's testimony, the error was harmless).

### III. Vocational Counselor Evidence

Plaintiff sought assistance from Oregon Vocational Rehabilitation Services (VRS) in May 2011. Tr. 398-410. In August 2011, the vocational counselor wrote

> Because of Jordon's documented cognitive and learning disabilities, it is being recommended that Jordon have a job coach to help him with interviews and job placement. A recommendation is being made to VR that once a job is secured, Jordon have a job coach on site for his first three months to help him navigate new directions and new tasks. Recommended with job is OJT.

Tr. 405. Plaintiff argues that it was error for the ALJ to fail to mention this opinion. The Commissioner argues only that the ALJ was not required to include the counselors' recommendations in an RFC.

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). The VRS report was prepared by a vocational counselor, making it lay evidence. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010) ("The regulations treat '[p]ublic and private social welfare agency personnel' as 'other sources,' 20 C.F.R. § 404.1513(d)(3), and the ALJ may expressly disregard lay testimony only if the ALJ 'gives reasons germane to each witness for doing so.'") (alteration in original) (citation omitted). Evidence from public or private social welfare organizations and their staff, as "other source"

FINDINGS AND RECOMMENDATION – 17

lay testimony, is competent if it shows the severity of a claimant's impairment(s) and how the impairment(s) affect the claimant's ability to work. 20 C.F.R. § 404.1513(d)(3); *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). An ALJ may not reject such testimony without comment. *Id.*

Here, the ALJ's decision fails to mention the lay witness evidence provided by vocational services. So, while I agree that it is not necessarily error for an ALJ to not include recommendations in an RFC determination, it was error for the ALJ here to ignore the lay evidence without comment. Furthermore, such error was not harmless as the testimony bears on the pivotal question regarding Plaintiff's ability to work unsupervised. Accordingly, upon remand, the ALJ should be directed to evaluate the lay evidence submitted by the vocational counselor and either credit that evidence or provide legally sufficient reasons for its rejection.

**IV. Remand**

A reviewing court has discretion to remand an action for further proceedings or for a finding of disability and an award of benefits. *See, e.g., Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir.1985). Whether an action is remanded for an award of benefits or for further proceedings depends on the likely utility of additional proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000).

In determining whether an award of benefits is warranted the court follows the "three-part credit-as-true standard." *Garrison v. Colvin*, 759 F3d 995, 1020 (9th Cir. 2014). Under this standard the court considers whether: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, (2) the record has been fully developed and further administrative proceedings would serve no useful purpose, and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Id*. If a

court concludes that a Plaintiff meets the three criteria of the credit-as-true standard, the improperly discredited evidence is credited as true and remand for an award of benefits is appropriate unless "the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled with the meaning of the Social Security Act." *Garrison*, 759 F.3d at 1020–1021 (citations omitted).

Here, the ALJ's failure to either include the limitations to which Dr. Whitehead opined or to provide a sufficient basis for rejecting Dr. Whitehead's opinion requires that this action be remanded for further proceedings. Remand is also supported by the failure of the ALJ to account for lay evidence provided by Plaintiff's vocational counselor. Due to conflicting evidence, the record is unclear regarding Plaintiff's ability to work unsupervised and remand for further proceedings is, therefore, appropriate. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F3d 1090, 1105 (9th Cir 2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency."). On remand, the ALJ should be required to either credit Dr. Whitehead's opinion and the vocational counselor's conclusions or provide legally sufficient reasons for their rejection. If the ALJ accepts the opinion and/or lay evidence, Plaintiff's RFC and the ultimate question of disability should be reexamined as well.

## Conclusion

For the reasons set forth above, the Commissioner's decision should be REVERSED and this action should be REMANDED pursuant to sentence four of 42 U.S.C. §405(g) for further administrative proceedings consistent with this Findings and Recommendation.

FINDINGS AND RECOMMENDATION – 19

**<u>Scheduling Order</u>**

This Findings and Recommendation will be referred to a district judge.  Objections, if any, are due March 20, 2017.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 2nd day of March, 2017.


    /s/ John Jelderks
John Jelderks
U.S. Magistrate Judge